## CHARLES E. JONES
### v.
## FRANK H. DUNTON.

1. CONTRACT FOR SERVICE—WRONGFUL DISCHARGE.— An employe wrongfully discharged by his employer, cannot wait till the expiration of the term for which he was hired, and then sue for his whole wages on the ground of constructive service. His remedy in such cases is an action to recover such damages as he has sustained by reason of the breach of the contract of hiring.

2. CONSTRUCTIVE SERVICE.—Where the contract was to pay the employe in weekly installments, and he is wrongfully discharged before the expiration of his term of service, he cannot sue and recover for the several installments as they become due, averring a readiness to perform, on the principle of a constructive service.

3. CONTRACTS—CONSTRUCTION.—A contract to serve a year at a fixed sum, the same to be paid in regular weekly installments, although a single contract, is divisible as respects the remedy; the stipulations as to payment being considered as several obligations.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed December 13, 1880.

This was an action of assumpsit, brought by appellant against appellee, under the following state of facts, as stipulated by the parties: On the sixteenth day of October, 1876, the parties entered into a contract, whereby, in consideration of the mutual promises therein, the plaintiff was to serve the defendant as editor, writer and proof-reader on a weekly newspaper for one year from said date, and the defendant was to pay the plaintiff one thousand and forty dollars, in equal installments

Jones v. Dunton.

of twenty dollars each, one installment to be paid at the end of each week during said year.

Said contract was performed by plaintiff on his part up to the sixth day of July, A. D. 1877, when the defendant, without sufficient cause, dismissed plaintiff, who thereupon notified defendant that he would hold himself in readiness to perform, and would insist upon a performance of the contract. during the remainder of said year, and plaintiff did hold himself in readiness, but after said sixth day of July, 1877, rendered no service to defendant.

At the time of said dismissal one installment, due July 3d, 1877, was unpaid, and for that installment and the one next thereafter accruing, plaintiff, on the tenth day of July, 1877, brought suit, and recovered therein forty dollars, which defendant paid. On the tenth day of August, 1877, four more installments, and no more, having matured by the terms of the contract, plaintiff brought another suit therefor, whereof the record is now on file in the Appellate Court of the First District.

On the third day of October, 1878, all the remaining installments, being ten in number, amounting in all to the sum of two hundred dollars, having matured by the terms of the contract, the present suit was brought in justice's court to recover the same, wherein the plaintiff had judgment for the amount claimed, and the defendant appealed to the circuit court, where judgment was rendered for the defendant.

The plaintiff moved for a new trial on two grounds: first, that the contract is a contract for the payment of a given sum of money in installments, and the plaintiff has a right of action on each installment as it matures; second, that the former suits, being for other installments than those claimed in the present suit, and brought before the other installments became due, are no bar to this action.

The court overruled the motion for a new trial, and rendered judgment for the defendant. The plaintiff brings the case here by appeal, and assigns various errors.

Mr. Emery M. Wood, for appellant; that the measure of

damages, in an action brought at the end of the term, would be the unpaid balance of salary for the entire term, cited Jaffray v. King, 34 Md. 217; Fuller v. Little, 61 Ill. 21; Trustees v. Shaffer, 63 Ill. 243; Sanger v. Chicago, 65 Ill. 511; Chiles v. Belleville Nail Co. 68 Ill. 123; Mahon v. Daly, 70 Ill. 653.

A new employment elsewhere is no defense to this action, but only a matter in mitigation of damages: Williams v. Chicago Coal Co. 60 Ill. 155; Fuller v. Little, 61 Ill. 25; Greenleaf on Evidence, § 261; Parsons on Contracts, § 261.

Plaintiff has a right of action upon each installment, as it becomes due: Hamlin v. Race, 78 Ill. 422; Moore v. Bennett, 40 Cal. 251; Crabtree v. Hagenbaugh, 25 Ill. 233; 3 Parsons on Contracts, 188.

Messrs. DOOLITTLE & McKEY, for appellee; that only a single suit for damages can be maintained, cited Moody v. Leverich, 4 Daly, 401; Trustees v. Shaffer, 63 Ill. 243; Whitaker v. Sandifer, 1 Duvall, 261; Gordon v. Brewster, 7 Wis. 309; Chamberlain v. McCallister, 6 Dana, 352; Polk v. Daly, 4 Daly, 411; Smith on Master and Servant, 159.

WILSON, J. The two principal questions to be considered are, first, as to the proper construction of the contract, whether it is to be regarded as entire or divisible; and second, if it is to be treated as divisible, what are the plaintiff's remedies for its breach by the defendant?

As to the first question, the authorities seem to agree that if one contract to do several things at several times, or to pay money by installments at different times, although the contract is contained in a single agreement, it is divisible as respects the remedy, and an action lies for every default. In all such cases, though the contract is in one sense entire, the stipulations as to payment or performance are several, and are considered, as to the remedy, as several obligations. Thus, on a note or other contract payable by installments, assumpsit lies upon each default in payment; or where interest is payable annually, the principal being postponed to a future time, an action lies for the non-payment of the interest before the principal becomes

Jones v. Dunton.

due and payable. And in such cases a suit and recovery for the interest, or for any subsequently matured installment of the principal, will be no bar to a subsequent action to recover the principal. 3 Parsons on Contracts, 187 (5th Ed.); Badger v. Titcomb, 15 Pick. 409.

And where the agreement embraces a number of distinct subjects which admit of being separately executed and closed, it must be taken distributively, each subject being considered as forming the matter of a separate agreement after it is so closed, and each default will support an action; for, as it is said, although the agreement is one, the performance is several. Perkins v. Hart, 11 Wheat. 251. See, also, Cooke v. Whormwood, 2 Saund. 337, where the court determine that in assumpsit on an award, whereby the defendant was awarded to pay the plaintiff several sums of money, at several times, an action might be maintained for such sum as was due at the time when the action was brought; and that the plaintiff might have a new action as the other sums became due, *toties quoties*. See, also, Crain v. Beach, 2 Comstock, 86; Crabtree v. Hagenbaugh, 25 Ill. 233.

It is unnecessary to multiply authorities on this branch of the case, as they all concur in announcing substantially the same principle.

In the present case the plaintiff entered the service of the defendant under a contract to serve for a term of one year, for which the defendant agreed to pay him ten hundred and forty dollars, to be paid in weekly installments of twenty dollars each, to be paid at the end of each week. These installments became, when due, separate and independent obligations, in default of payment of which separate actions would lie. Having been wrongfully discharged after entering upon the performance of the contract, what are the plaintiff's rights, and what his remedies in respect thereto? While the authorities bearing upon the subject are not in all respects harmonious, there appears to be a substantial concurrence upon the three following propositions: (1) that an employe discharged under such circumstances may sue at once *for a breach of the contract*, and recover his damages up to the time of suit brought, in

which case the judgment will be a bar to any further action; (2) he may wait till the end of the contract period, and then sue for the breach, when he may recover his entire damages, and these, according to the decisions of some of the courts, will be the full amount of his wages or salary for the whole period, less what the defendant may show the plaintiff has earned, or might reasonably have earned, from the time of his discharge to the end of the contract period; (3) he may treat the contract as rescinded and sue immediately on a *quantum meruit*, for the services performed, in which case he can recover for the time he actually served.

To these remedies it is claimed a fourth one should be added, namely, that he may treat the contract as existing, and sue at each period of payment to recover the installment provided for by the contract, upon an averment of readiness to perform, though not having actually rendered any service, subject, as before, to a reduction by the amount of what he has earned, or might reasonably have earned in the meantime by other employment; in other words, that he is entitled to recover his stipulated wages upon the principle of " constructive service," and it is upon this ground that the plaintiff's present action rests. His suit, though brought before a justice of the peace, in which no declaration was filed, was, as appears from the stipulated facts, not an action to recover damages for a breach of the contract, but is for certain specified weekly installments of wages, claimed to be due and payable, treating the contract as still subsisting.

It appears by the stipulation that upon being discharged, the plaintiff notified defendant that he would hold himself in readiness to perform, and would insist on a performance of the contract during the remainder of the year. It further appears that at the time of his discharge one installment, due July 3d, 1877, was unpaid, and for that installment and the one next thereafter accruing, the plaintiff on July 10th, 1877, brought suit and recovered therein forty dollars, which defendant paid; that on the tenth day of August, 1877, four more installments having matured by the terms of the contract, plaintiff brought another suit therefor, which is still pending; and that on the

third day of October, 1878, the remaining installments, ten in number, having matured, the present suit was brought to recover the same.

It thus appears that this suit was not brought to recover damages for a breach of the contract, but that, treating the contract as still subsisting, the plaintiff sues for installments of wages, not earned by services actually rendered, but which he claims to be due for constructive service. The real question, therefore, is whether in a suit to recover for wages alleged to have been performed at the defendant's request, the plaintiff is entitled to recover under an allegation of readiness and willingness to perform, but without proof that the services were actually rendered.

The answer to this question, it must be admitted, is not free from difficulty, and in relation to which there is some conflict in the authorities.

This precise question does not appear to have been directly passed upon by the Supreme Court of this State. Several cases, based upon a state of facts similar to those in the present suit, have been before that court, in which an employe has been allowed to recover, but it will be found upon an examination of those cases that the suits were brought to recover damages for a breach of the contract, or if in a suit upon the contract to recover for wages, the right to recover in that form of action was not brought in question nor considered by the court. Thus in Chiles v. The Belleville Nail Mill Co. 68 Ill. 123, the plaintiff was employed by the defendant as book-keeper for the period of one year, at a specified salary, and before the expiration of his term of service, was discharged without cause, and afterwards brought suit to recover his wages for the unexpired part of the year after his dismissal, having been paid for the time he actually served. It was held by the court, Breese dissenting, that he was entitled to recover. The only question presented, however, or considered by the court, was whether the evidence showed there was an employment for a year, and the question of constructive service was not raised.

In Mahon v. Daly, 70 Ill. 653, the defendants agreed to em-

ploy the plaintiff for a specified term at the rate of twelve hundred and fifty dollars per month, payable semi-monthly. After entering upon his employment he was discharged by the defendants, and brought his action upon the contract, setting it out in *hæc verba*, to recover for his services up to the time of being discharged, according to the price fixed by the contract. The question of constructive service was not involved nor considered by the court.

In Dana v. Short, 81 Ill. 468, the suit, so far as can be gathered from the report, was for the recovery of damages for a breach of the contract, caused by the plaintiff's wrongful discharge after one month's service under a hiring for the winter, at ten dollars a week. He recovered, not for his weekly wages, but as stated by the court for the damages he sustained by the wrongful discharge.

In Hamlin et al. v. Race, 78 Ill. 422, the plaintiff was employed by the defendant for one year, at a salary payable in monthly installments, and was wrongfully discharged before the expiration of the term. They offered to pay him the amount due up to the time of his discharge, which he declined to receive, and brought suit before the end of the year to recover the balance for the full year. On trial in the court below he recovered the full amount. The Supreme Court reversed the judgment on the ground that he was, in no event, entitled to recover more than was due him at the time he brought his suit.

In Trustees of Soldiers Orphans' Home v. Robert Shaffer, 63 Ill. 243, the plaintiff was hired by the trustees of the Home for the term of one year, and before the expiration of the term was wrongfully dismissed. The suit was brought to recover *wages* after the plaintiff's dismissal. Thornton, J., in delivering the opinion of the court said : "Where a servant is hired for a fixed period and is discharged without cause, during the term, he may recover for the whole time, deducting any amount obtained for work elsewhere, or which might have been obtained by reasonable effort. But the action must be special and not for work and labor done. The damages result from a breach of the contract in consequence of the dis-

Jones v. Dunton.

missal. The services have never been performed and therefore *indebitatus assumpsit* cannot be maintained." Citing Hull v. Heightman, 2 East, 145; Smith v. Hayward, 7 Adol. & Ellis, 544; Archard v. Horner, 3 Car. & Payne, 349; Hartley v. Harman, 11 Adol. & Ellis, 798.

Upon a review of these decisions, we think the most that can be fairly claimed, is that it remains an open question in this state, whether an employe who has been hired for a definite term, on a fixed salary, payable in specified installments during the term, and has been wrongfully discharged before the expiration of the term, can sustain an action on the contract, for services not actually performed, upon an averment of readiness to perform; or whether, on the other hand, his remedy is not by a suit to recover damages for a breach of the contract.

We have examined the cases cited by the editor of the "American Law Register," in his notes to the case of Huntington v. Railroad Co. Vol. 7, p. 143; the leading one being that of Armfield v. Nash, 31 Mississippi, 361; also Thompson v. Wood, 1 Hilton, 93; Colburn v. Woodworth, 31 Barb. 381; Fowler v. Armour, 24 Alabama, 199; Gordon v. Brewster, 7 Wis. 355; Booge v. Pac. R. R. Co. 33 Mo. 212; in relation to the doctrine of "constructive service." It would serve no useful purpose to review them in detail. Suffice it to say, that upon the authority of those cases standing alone, we should hesitate to say they are not sufficient to support the doctrine of constructive service; but it is proper to add that, in some of them, the principle was either assumed as an existing one, or was only incidentally considered; while in others, the action was brought to recover damages for a breach of the contract, and the wages stipulated, less what the plaintiff had earned, or might reasonably have earned, was held to be the proper measure of the damages. The doctrine enunciated in these cases, was, however, disapproved by the Commission of Appeals of New York, in the case of Howard v. Daly, 61 N. Y. 362; to which reference will be made presently.

In Moody v. Leverich, 4 Daly's Rep. 401, Ch. J. Daly, in an elaborate opinion discusses the question of constructive service, and shows satisfactorily that in the English courts the

doctrine is now repudiated.  The idea of constructive service seems to have had its origin in a *nisi prius* decision of Lord Ellenborough in Gandell v. Pontiguy, 4 Camp. 375, where a servant, having been discharged before the expiration of the quarter for which he had been engaged, sued to recover wages for the entire quarter, his Lordship said that as the plaintiff had served a part of the quarter, and had been willing to serve for the residue, he might, in contemplation of law, be considered to have served the whole.

Afterwards, in Archard v. Hornor, 3 Car. & Payne, 349, it was held that if the servant is turned away improperly before the end of the year for which he was engaged, he cannot recover upon a count stating the contract to be for one entire year, and that if he sue for *wages* under the contract, he can recover only for the period during which he served.   In other words, that if he sues upon the contract for the wages contracted for, performance is essential to a recovery.

In the subsequent case of Smith v. Hayman, 7 Ad. & Ellis, 544, the court approved the decision in Archard v. Hornor. The four judges who delivered the opinions all expressed their dissatisfaction with Lord Ellenborough's decision in Gandell v. Pontiguy, and said that Archard v. Hornor was grounded on the better reason.

In Fewing v. Tisdall, 1 Exch. R. 295, the servant was dismissed without a month's warning, and her wages being paid only up to the time of her dismissal, she brought an action to recover a month's wages, commencing from the day of her dismissal, and it was held that the action could not be maintained, the judges agreeing that Archard v. Hornor, which Chief Baron Pollock said was recognized by all the courts, was decisive of the case.

In the notes to Cutter v. Powell, 2 Smith's Lead. Cas. 48, it is said:  " Since the case of Fewing v. Tisdall and the observations of the judges in Smith v. Hayward, there seems to be every reason to suppose that the case of Gandell v. Pontiguy would not be supported at the present day."   See, also, the case of Goodman v. Pocock, 15 Q. B. 576.   We think it may thus be safely assumed that the settled rule in England is adverse to the principle of constructive service.

In the comparatively recent case of Howard v. Daly, 61 N. Y. 362, decided by the Commission of Appeals, in 1875, the various remedies of a servant wrongfully discharged, are very fully discussed, and the doctrine of the English courts approved. Commissioner Dwight, who delivered the opinion of the court, which, on this branch of the subject, was concurred in by all the judges, says: "It is very plain that if a servant has actually performed the service which he has agreed to render under the contract, he has a right to recover *wages*. That would have been true if the defendant had rendered her services for the stipulated period. Had he not paid her according to the agreement, her action would have been for the fixed wages. If, on the other hand, she is wrongfully discharged, and the relation of master and servant is broken off, so far as she is concerned, it is clear that she cannot recover for wages, in the same sense as if she had actually rendered the service. In an early *nisi prius* case the fiction of a constructive service was resorted to, and a servant, discharged without cause, was allowed to recover wages. Gandell v. Pontiguy, 4 Camp. 375. This view has been discarded in later decisions, and has been disapproved by text writers." (Citing many English cases, including some of those hereinabove referred to; also, 1 Denio, 317; 1 Duvall, Ky, 261; 6 Dana, 352; 8 Barb. 423; Moody v. Leverich, 4 Daly, 401, *supra;* C. N. Smith, on Master and Servant, p. 95, note g.)

" These cases and authorities," continues the learned Judge, " hold, in substance, that if a servant be wrongfully discharged, he has no action for *wages*, except for past services rendered, and for sums of money that have become due. As far as any other claim on the contract is concerned, he must sue for the injury he has sustained by his discharge, in not being allowed to serve and earn the wages agreed upon. A servant wrongfully discharged, has but two remedies growing out of the wrongful act: (1). He may treat the contract of hiring as continuing, though broken by the master, and may recover damages for the breach. (2). He may rescind the contract, in which case he could sue on a *quantum meruit* for services actually rendered. These remedies are independent of, and ad-

ditional to his right to sue for *wages* for sums actually earned and due by the terms of the contract. This last amount he recovered because he has completed, either in full or in a specified part, the stipulations between the parties. The first two remedies are appropriate to a wrongful discharge."

After referring to, and criticising the cases which are supposed to maintain the doctrine of constructive service, among which are Gandell v. Pontiguy, *supra;* Fowler v. Armour, 24 Ala. 194; Armfield v. Nash, 31 Miss. 361; Gardner v. Brewster, 7 Wis. 355; Booge v. Pac. R. R. Co. 33 Mo. 312; he continues, "This doctrine is however so opposed to principle, so clearly hostile to the great mass of the authorities,       *       * that we cannot accept it. If a person discharged from service may recover wages, or treat the contract as still subsisting, then he must remain idle in order to be always ready to perform the service. How absurd it would be, that one rule of law should call upon him to accept other employment, while another rule required him to remain idle, in order that he may recover full wages."

In Kentucky the court of appeals, in the well considered case of Chamberlain v. McAllister et al. 6 Dana, 352, have enunciated the same doctrine as that held in New York. And in a later case of Whitaker v. Sandifer, 1 Duvall, 261, where the plaintiff on a contract between the parties, undertook to serve the defendant for the year 1860, as overseer of his farm and slaves, for the sum of $399, payable at the end of the year, and after entering upon the performance of the contract and continuing to serve until October, was wrongfully discharged, and after the expiration of the year brought his action for his salary, the court held that he was not entitled to recover the price agreed upon for the whole year, on the ground that in such a case readiness to perform and prevention by the employer are not equivalent to actual performance, but only entitle the employe to the damages he sustained in his disappointment and loss of equally profitable employment.

In the earlier case of Clark v. Marsiglia, 1 Denio, 317, decided by the Supreme Court of New York in 1845, certain paintings were delivered to the plaintiff by the defendant to clean

Jones v. Dunton.

and repair at the agreed price of one hundred and fifty-six dollars. After the plaintiff had commenced work upon them, the defendant desired him not to go on, as he had concluded not to have the work done. The plaintiff, notwithstanding, finished the cleaning and repairing of the pictures, and was allowed by the court below to recover the entire stipulated sum. The Supreme Court, in reversing the judgment, said: "The plaintiff was allowed to recover, as though there had been no countermand of the order; and in this the court erred. The defendant, by requiring the plaintiff to stop work, violated his contract, and thereby incurred a liability to pay such damages as the plaintiff should sustain. Such damages would include a recompense for the labor done, and such further sum in damages as might, upon legal principles, be assessed for a breach of the contract; but the plaintiff had no right, by obstinately persisting in the work, to make the penalty upon the defendant greater than it would otherwise have been. To hold that one who employs another to do a piece of work, is bound to suffer it to be done at all events, would sometimes lead to great injustice. A man may hire another to labor for a year, and within the year his situation may be such as to render the work entirely useless to him. The party employed cannot persist in working, though he is entitled to the damages consequent upon his disappointment. So, if one hires another to build a house, and subsequent events put it out of his power to pay for it, it is commendable in him to stop the work, and pay for what has been done, and the damages sustained by the contractor. In all such cases the just claims of the party employed are satisfied when he is fully recompensed for his part performance, and indemnified for his loss in respect to the part left unexecuted."

Upon a review of the authorities on this subject, our conclusion is that the better rule and sounder reason is, that an employe wrongfully discharged by his employer, cannot wait till the expiration of the term for which he was hired, and then sue for his whole wages on the ground of constructive service; that his remedy in such cases is an action to recover such damages as he has sustained by reason of the breach of the

contract of hiring; and that he can recover on the contract for *wages* only for the period during which he actually served. There are many cases in which the tender of performance is deemed equivalent to a performance, such as agreements for the sale and purchase of lands, where the vendor has tendered a conveyance; also, for goods sold where delivery has been tendered. But there is an obvious distinction between such cases, when, as has been said, the thing agreed to be sold has an independent existence, and the *corpus* not being perishable or changeable, the title has so far passed that the vendor remains but the trustee in respect to it, and cases of master and servant, where the contract is for personal and individual services.

Nor is there any hardship or injustice in rejecting the doctrine of constructive service in a suit upon the contract to recover wages. The servant may have his action for damages for the breach of the contract, and recover full compensation for all losses he has sustained by reason of his wrongful discharge; and just compensation should, after all, be the end aimed at in suits for the breach of contracts. It may be that the measure of damages in an action for the breach of a contract of hire for the wrongful discharge of a servant would, *prima facie*, be the amount of wages agreed upon; but the determination of that question is not necessary to the decision of the present suit.

Being of the opinion that the plaintiff was not entitled to recover in this suit wages for services not actually performed, we think the court below decided correctly in rendering judgment for the defendant, and the judgment must be affirmed.

Judgment affirmed.

McALLISTER, P. J. It seems to me to be a well established rule of law, that if a person is employed under a contract of service for a specified period, at a stated salary, and is discharged by his employer, without cause, before the end of that period, the former may wait until the end of such period, then bring his action to recover damages for such wrongful discharge; in which case the measure of damages would be such

compensation as would be a complete indemnity for such illegal discharge, which is usually arrived at by taking as a basis the amount he was to receive by the terms of the hiring, which the defendant may diminish by showing that plaintiff, during the time the contract was to run, had earned, or might have earned, wages in some other employment of the same general character. Williams v. Chicago Coal Co. 60 Ill. 149.

There is, however, no legal obstacle to such employe maintaining an action brought to recover damages for the wrongful discharge, though brought before the contract time had expired. If the hiring was for a long period, say ten years, and the employe was discharged without cause, during the first three months, it would be an unreasonable rule which should require him to wait until the ten years had expired, before he could maintain any action to recover for such illegal discharge. Sedg. on Dam. 6th Ed. p. 417, and cases in note 2.

Whatever might be the measure of damages where the action was brought before the contract expired, as it must be founded upon the wrongful discharge, and be to recover damages for such wrongful discharge, it is clear to my mind, that he cannot bring an action and recover before the time expired, and then maintain another after the contract time had expired, and recover for the same breach.

Although this present suit was brought after the time of hiring had expired, yet it appears that the plaintiff had, soon after his discharge, brought suit not for wages previously earned, but necessarily, as damages for such discharge, and recovered forty dollars damages. No matter how those damages were measured, the *gist* of the action must have been the illegal discharge. That judgment, I regard, as a bar to any further recovery; and on that ground, am for affirming the judgment below.